| | |
|---|---|
| DISTRICT COURT<br>JEFFERSON COUNTY, COLORADO<br><br>Court Address:   100 Jefferson County Parkway<br>                    Golden, CO 804041<br>Court Phone:    720 772 2500 | DATE FILED<br>June 12, 2025 8:43 PM<br>FILING ID: DDA9B828DBE24<br>CASE NUMBER: 2025CV30931 |
| **Plaintiff:**<br><br>**LURA HUBER, individually and on behalf of all others similarly situated,**<br><br>**v.**<br><br>**Defendants:**<br><br>**INTERMOUNTAIN HEALTH CARE, INC. and SCL HEALTH PARTNERS, LLC** | ▲ COURT USE ONLY ▲ |
| Attorneys for Plaintiff:<br><br>**Matthew S. Parmet**, Atty Reg. # 53046<br>**PARMET LAW PC**<br>2 Greenway Plaza, Ste. 250<br>Houston, TX 77046<br>phone  713 999 5200<br>matt@parmet.law<br><br>**Don J. Foty**, Texas Bar No. 24050022<br>(*seeking admission pro hac vice*)<br>dfoty@fotylawgroup.com<br>**FOTY LAW GROUP**<br>2 Greenway Plaza, Suite 250<br>Houston, Texas 77046<br>Telephone: (713) 523-0001<br>Facsimile: (713) 523-1116 | Case No: _____<br><br>Div.: _____    Ctrm.: _____ |
| **PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT** ||

INTRODUCTION

1.　　This is a class action lawsuit brought by Plaintiff Lura Huber, individually and on behalf of all others similarly situated to recover unpaid wages, penalties, and attorneys' fees and costs. Defendants Intermountain Health Care, Inc. ("Intermountain") and SCL Health Partners, LLC ("SCL") implemented an illegal policy requiring its non-exempt workers to undergo a COVID-19 screening without pay. This physical and medical examination constitutes compensable time that was worked by Huber. By failing to pay for this time worked, Defendants have violated Colorado law. In addition to Huber, Defendants have failed to pay for the time spent undergoing COVID-19 screenings by thousands of other workers across Colorado.

2.　　By failing to pay for such time, Defendants violated Colorado law.

3.　　Defendants' conduct violates Colorado law because Intermountain failed to pay Huber and the similarly situated workers their minimum wage and overtime compensation for all time worked as required by the Colorado Constitution art. XVIII, § 15, the Colorado Wage Act (CWA), C.R.S. § 8-4-101 *et seq.*, the Colorado Minimum Wage Act (CMWA), C.R.S. § 8-6-101 *et seq.*, and the Colorado Overtime and Minimum Pay Standards Order ("COMPS Order") #39, 7 C.C.R. 1103-1 (collectively, "Colorado Wage-and-Hour Law").

4.　　Specifically, Colorado Wage-and-Hour Law requires employers to pay employees their agreed wage rates–their minimum or overtime wage rates–for all time worked. *See* COMPS Order, Rules 3, 4.

5.　　Under Colorado Wage-and-Hour Law, "time worked" includes: (1) time during which an employee is required to be on the employer's premises; (2) time during which an employee is required to be on duty; (3) time during which an employee is required to be at the prescribed workplace; and (4) time spent on travel for the benefit of the employer. COMPS Order, Rule 1.9.

6.　　Further, under Colorado Wage-and-Hour Law, employers must "authorize and permit a compensated 10-minute rest period for each 4 hours of work, or major fractions thereof." COMPS Order, Rule 5.2.

7.　　COMPS Order 5.2.4 requires:

When an employee is not authorized and permitted a required 10-minute rest period, his or her shift is effectively extended by 10 minutes without compensation. Because a rest period requires 10 minutes of pay without work being performed, work during a rest period is additional work for which additional pay is not provided. Therefore, a failure by an employer to authorize and permit a 10-minute compensated rest period is a failure to pay

- 2 -

10 minutes of wages at the employee's agreed-upon or legally required (whichever is higher) rate of pay.

8.    Defendants failed to authorize and permit Huber and the Similarly Situated Workers to take a 10-minute rest period when they worked in Colorado.

9.    Consequently, Huber brings this lawsuit as a class action under Colorado Rule of Civil Procedure 23 to recover unpaid minimum wages, unpaid overtime compensation, mandatory penalties under C.R.S. § 8-4-109(3)(b)(I), additional penalties under C.R.S. § 8-4-109(3)(b)(II), and attorneys' fees and costs due to them and the similarly situated workers. *See* C.R.S. §§ 8-4-109(3)(b), 8-4-110, 8-6-118.

## JURISDICTION & VENUE

10.    This Court has personal jurisdiction over Intermountain because Intermountain has had sufficient minimum contacts with Colorado to confer jurisdiction over Intermountain. Specifically, Intermountain does business in Colorado, maintains offices in Colorado, advertises in Colorado, markets and sells to Colorado customers, and employs Colorado residents. The violations of law forming the basis of this action also occurred in Colorado.

11.    Venue is proper in Jefferson County because Intermountain and SCL reside in Jefferson County. COLO. R. CIV. P. 98(c)(1).

12.    SCL's principal offices are located in Broomfield, Colorado.

13.    Intermountain operates in Broomfield, Colorado.

## PARTIES

14.    **Plaintiff Lura Huber** is a natural person who is a resident and citizen of Colorado.

15.    Huber worked for Defendants in Colorado.

16.    Huber represents a class of similarly situated persons Colorado Rule of Civil Procedure 23, which is comprised of:

**All current and former employees of Defendants who were paid on an hourly basis and who worked in Colorado, from six years prior to the date this Complaint is filed until final judgment is entered.**

17.    Throughout this Complaint, the putative class members are also referred to as the "Similarly Situated Workers."

18.     **Defendant Intermountain Health Care, Inc.** is a foreign corporation with its principal office in Salt Lake City, Utah.

19.     Intermountain may be served by service of process on its registered agent, **InCorp Serices, Inc., 36 South 18th Ave., Suite D, Brighton, CO 80601**, or by any other method authorized by law.

20.     **Defendant SCL Health Partners, LLC ("SCL")**, is a domestic limited liability company.

21.     At all relevant times, one or more of SCL Health Partners, LLC's ultimate members were and are citizens of Colorado.

22.     SCL may be served by service of process on its registered agent, **InCorp Serices, Inc. 36 South 18th Ave., Suite D, Brighton, CO 80601**, or by any other method authorized by law.

23.     Intermountain and SCL employed and/or jointly employed Huber.

24.     Intermountain and SCL are joint employers of Huber for purposes of Colorado law.

25.     Intermountain and SCL employed and/or jointly employed the Similarly Situated Workers.

26.     Intermountain and SCL are joint employers of the Similarly Situated Workers for purposes of Colorado law.

### COVERAGE UNDER COLORADO WAGE-AND-HOUR LAW

27.     At all material times, Intermountain has been governed by and subject to Colorado Wage-and-Hour Law.

28.     At all material times, Intermountain has been an employer within the meaning of Colorado Wage-and-Hour Law. *See* C.R.S. § 8-4-101(6); COMPS Order, Rule 1.6.

29.     At all material times, Huber and the Similarly Situated Workers have been employees of Intermountain within the meaning of Colorado Wage-and-Hour Law. *See* C.R.S. § 8-4-101(5); COMPS Order, Rule 1.5.

30.     At all material times, Intermountain was and is legally responsible for the unlawful conduct, policies, practices, acts, and omissions as described and set forth in this Complaint, as the employer of Huber and the Similarly Situated Workers.

31.     At all material times, SCL has been governed by and subject to Colorado Wage-and-Hour Law.

32.     At all material times, SCL has been an employer within the meaning of Colorado Wage-and-Hour Law. *See* C.R.S. § 8-4-101(6); COMPS Order, Rule 1.6.

33.     At all material times, Huber and the Similarly Situated Workers have been employees of SCL within the meaning of Colorado Wage-and-Hour Law. *See* C.R.S. § 8-4-101(5); COMPS Order, Rule 1.5.

34.     At all material times, SCL was and is legally responsible for the unlawful conduct, policies, practices, acts, and omissions as described and set forth in this Complaint, as the employer of Huber and the Similarly Situated Workers.

FACTUAL BACKGROUND

**A.    Huber's employment with Defendants.**

35.     Huber began working for SCL in September 2018.

36.     SCL merged with Intermountain in April 2022.

37.     Defendants operate a large health care organization with hospitals and healthcare facilities throughout the American west, including Colorado.

38.     Defendants employ thousands of hourly workers to provide their healthcare services.

39.     Among the facilities operated by Defendants operate is St. Mary's Regional Hospital in Grand Junction, Colorado.

40.     Huber worked as an hourly, non-exempt employee for Defendants at St. Mary's Regional Hospital.

41.     Huber worked for Defendants from approximately September 2018 to August 2024.

42.     Huber was paid an hourly rate of approximately $19 per hour.

43.     Huber was regularly scheduled to work 40 hours each week by Intermountain.  However, when adding the time that was spent working without pay, Huber worked more than 40 hours per week.

44.     Indeed, during her employment, Huber regularly worked over 40 hours per workweek, 12 hours per workday, and/or 12 hours per shift.

**B.      Defendants failed to pay for all time worked.**

45.      Under Colorado law, "'time worked' means time during which an employee is performing labor or services for the benefit of an employer, including all time s/he is suffered or permitted to work, whether or not required to do so." *See* 7 C.C.R. § 1103-1(1.9).

46.      This includes "requiring or permitting employees to be on the employer's premises, on duty, or at a prescribed workplace (but not merely permitting an employee completely relieved from duty to arrive or remain on-premises) — including but not limited to, if such tasks take over one minute, putting on or removing required work clothes or gear (but not a uniform worn outside work as well), receiving or sharing work-related information, **security or safety screening**, remaining at the place of employment awaiting a decision on job assignment or when to begin work, performing clean-up or other duties "off the clock," clocking or checking in or out, or waiting for any of the preceding — shall be considered time worked that must be compensated." *See* 7 C.C.R. § 1103-1(1.9.1) (emphasis added).

47.      During the COVID pandemic—that is, beginning approximately March 2020—Defendants implemented a company-wide policy of requiring health screenings before its employees could clock in to work.

48.      These health screenings led to long lines and significant unpaid wages.

49.      Huber and the Similarly Situated Workers would have to arrive early, wait in a line standing six feet apart from their co-workers, answer health screening questions and have their temperature checked.

50.      Only after passing the COVID screening could Huber and the Similarly Situated Workers proceed with clocking-in.

51.      The time spent waiting in line and completing the COVID screening took approximately 5-10 minutes.  However, this time could be longer depending upon the number of people waiting in line.

52.      This COVID screening should have been paid by Intermountain because it constitutes compensable time worked under Colorado law.  Intermountain required its employees to follow Defendants' instructions while awaiting and during the COVID screening.  Intermountain required every employee to complete the COVID screening and it was not optional.  Indeed, the COVID screening was required by Defendants and their employees must comply under threat of discipline, including possible termination.

53.      Additionally, Defendants' employees were confined to the premises of Intermountain when they waited for and during the examination.

54. Under Colorado law, the time spent undergoing the COVID screening is compensable time that should have been paid by Intermountain.

55. In addition, because many employees were clocked in for 40 hours a week or just shy of 12 hours in a day, this off the clock work often resulted in unpaid overtime, including for Huber.

## C. Defendants did not pay under the continuous workday rule.

56. Pursuant to the continuous workday rule, once the first compensable activity is performed, the continuous workday has started, and all subsequent activities performed are compensable regardless of the amount of time each specific individual activity takes. *See* Colo. Dept. of Labor and Empl., Div. of Lab. Standards and Statistics, Interpretive Notice & Formal Opinion ("INFO") #20A. The continuous workday rule requires compensation from the start of the first compensable activity to the last compensable activity. *See id.* Specifically, INFO #20A states:

> Even if time isn't otherwise time worked, it counts as part of a '**continuous workday**' of time worked, if it's **after** other time **starts**, and **before** other time **worked ends** – excluding long enough breaks [when **completely relieved from duty**.]

*Id.* (emphasis in original).

57. Under Colorado Wage-and-Hour Law, "time worked" includes: (1) time during which an employee is required to be on the employer's premises; (2) time during which an employee is required to be on duty; (3) time during which an employee is required to be at the prescribed workplace; and (4) time spent on travel for the benefit of the employer. COMPS Order, Rule 1.9.

58. This includes the time spent walking from the COVID screening station to the time clocks.

59. Therefore, Huber and the Similarly Situated Workers are entitled to compensation from the time they first arrive at the workplace to wait in line to be screened for COVID to the end of their shift.

60. Huber and the Similarly Situated Workers were non-exempt employees.

61. Huber and the Similarly Situated Workers were paid on an hourly rate basis.

62. When they worked more than 40 hours in a workweek, 12 hours per workday, and/or 12 hours per shift, they were entitled to overtime compensation.

63.     Due to substantial work that was completed off the clock, Huber and the Similarly Situated Workers were not paid for all time worked each day and are owed significant unpaid minimum wages and unpaid overtime compensation.

64.     Defendants' method of paying Huber and the Similarly Situated Workers in violation of Colorado law was not based on a good faith and reasonable belief that their conduct complied with the law. Defendants knew the requirement to pay for all time worked, but intentionally and/or recklessly chose not to do so.

**D.     Defendants did not provide required rest breaks.**

65.     Under Colorado Wage-and-Hour Law, employers must "authorize and permit a compensated 10-minute rest period for each 4 hours of work, or major fractions thereof." COMPS Order, Rule 5.2.

66.     Thus,

When an employee is not authorized and permitted a required 10-minute rest period, his or her shift is effectively extended by 10 minutes without compensation. Because a rest period requires 10 minutes of pay without work being performed, work during a rest period is additional work for which additional pay is not provided. Therefore, a failure by an employer to authorize and permit a 10-minute compensated rest period is a failure to pay 10 minutes of wages at the employee's agreed-upon or legally required (whichever is higher) rate of pay.

COMPS Order, Rule 5.2.4.

67.     Defendants failed to authorize and permit Huber and the Similarly Situated Workers to take a 10-minute rest period when they worked in Colorado.

68.     Defendants did not authorize or allow any rest period at all.

69.     Instead, Huber and the Similarly Situated Workers regularly worked long hours, well over 4 hours, without any breaks. They were not permitted to take any breaks after 4 hours of work. Instead, they had to work their entire shift without breaks, in violation of Colorado Wage-and-Hour Law.

CLASS ACTION ALLEGATIONS

70.     <u>Numerosity</u>: The number of members in the Class is believed to exceed 40 and in fact, is likely to be in the thousands. This volume makes bringing the claims of each individual member of the Class before this Court impracticable. Likewise, joining each individual member of the Class as a Plaintiff in this action is impracticable. Furthermore, the identity of the members of the Class will be determined from

Defendants' records, as will the compensation paid to each of them. As such, a class action is a reasonable and practical means of resolving these claims. To require individual actions would prejudice the Similarly Situated Workers.

71.    <u>Typicality</u>: Huber's claims are typical of the Similarly Situated Workers' claims because like the members of the Class, Huber was subject to Defendants' uniform policies and practices and were compensated in the same manner as others in the Class. Defendants failed to pay the Similarly Situated Workers for all hours they worked. Additionally, members of the Class worked substantially more than 40 hours in a workweek, 12 hours in a workday, and/or 12 hours in a shift as non-exempt employees. Accordingly, Huber and the Similarly Situated Workers have been uncompensated and/or under-compensated in weeks when they worked less than 40 hours, weeks when they worked more than 40 hours, workdays when they worked more than 12 hours, and/or shifts when they worked more than 12 hours as a result of Defendants' common policies and practices which failed to comply with Colorado law. As such, Huber's claims are typical of the claims of the Similarly Situated Workers. Huber and the Similarly Situated Workers sustained damages arising out of and caused by Defendants' common course of conduct in violation of law as alleged herein.

72.    <u>Adequacy</u>: Huber is a representative who will fairly and adequately protect the interests of the Similarly Situated Workers because it is in their interests to effectively prosecute the claims herein alleged to obtain the unpaid minimum wages and unpaid overtime compensation, and penalties required under Colorado law. Huber has retained attorneys who are competent in both class actions and wage-and-hour litigation. Huber do not have any interest which may be contrary to or in conflict with the claims of the Similarly Situated Workers they seek to represent.

73.    <u>Commonality</u>: Common issues of fact and law predominate over any individual questions in this matter. The common issues of fact and law include, but are not limited to:

a.    Whether Defendants failed to pay Huber and the Similarly Situated Workers the minimum wage rate for the time spent waiting in line and completing the COVID screenings;

b.    Whether the time spent walking from the COVID screening station to the time clocks is compensable under Colorado law;

c.    Whether Defendants failed to pay Huber and the Similarly Situated Workers the proper overtime rate for all time worked;

d.    Whether Defendants failed authorize or permit Huber and the Similarly Situated Workers to take 10-minute rest breaks after 4 hours of work;

e.    The amount of unpaid time; and

      f.      The proper measure of damages sustained by Huber and the Similarly Situated Workers.

74.    <u>Superiority</u>: A class action is superior to other available means for the fair and efficient adjudication of this lawsuit. Even in the event any member of the Class could afford to pursue individual litigation against a company the size of either of Defendants, doing so would unduly burden the court system. Individual litigation would magnify the delay and expense to all parties and flood the court system with duplicative lawsuits. Prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying judicial results and establish incompatible standards of conduct for Defendants.

75.    A class action, by contrast, presents far fewer management difficulties and affords the benefits of uniform adjudication of the claims, financial economy for the parties, and comprehensive supervision by a single court. By concentrating this litigation in one forum, judicial economy and parity among the claims of individual class members are promoted. Additionally, class treatment in this matter will provide for judicial consistency. Notice of the pendency and any resolution of this action can be provided to the Similarly Situated Workers by mail, electronic mail, text message, print, broadcast, internet, and/or multimedia publication. The identity of the members of the Class are readily identifiable from Defendants' records.

76.    This type of case is well-suited for class action treatment because: (1) Defendants' practices, policies, and/or procedures were uniform; (2) the burden is on Defendants to prove it properly compensated its employees including any potential exemptions that might apply; and (3) the burden is on Defendants to accurately record hours worked by employees. Ultimately, a class action is a superior form to resolve the Colorado claims detailed herein because of the common nucleus of operative facts centered on the continued failure of Defendants to pay Huber and the Similarly Situated Workers per applicable Colorado laws.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF—FAILURE TO PAY MINIMUM AND OVERTIME WAGES AS TO HUBER AND THE CLASS MEMBERS

77.    Huber incorporates all allegations in paragraphs **Error! Reference source not found.** to 76.

78.    At all material times, Intermountain has been an employer within the meaning of Colorado Wage-and-Hour Law. *See* C.R.S. § 8-4-101(6); COMPS Order, Rule 1.6.

79.     At all material times, Huber and the Similarly Situated Workers have been employees of Intermountain within the meaning of Colorado Wage-and-Hour Law. *See* C.R.S. § 8-4-101(5); COMPS Order, Rule 1.5.

80.     At all material times, SCL has been an employer within the meaning of Colorado Wage-and-Hour Law. *See* C.R.S. § 8-4-101(6); COMPS Order, Rule 1.6.

81.     At all material times, Huber and the Similarly Situated Workers have been employees of SCL within the meaning of Colorado Wage-and-Hour Law. *See* C.R.S. § 8-4-101(5); COMPS Order, Rule 1.5.

82.     Colorado Wage-and-Hour Law requires employers to pay employees for all time worked. *See* C.R.S. § 8-4-103; C.R.S. § 8-6-106; COMPS Order, Rule 1.9, Rule 3, and Rule 4.

83.     Under the COMPS Order, Rule 1.9:

1.9    'Time worked' means time during which an employee is performing labor or services for the benefit of an employer, including all time s/he is suffered or permitted to work, whether or not required to do so.

1.9.1    Requiring or permitting employees to be on the employer's premises, on duty, or at a prescribed workplace (but not merely permitting an employee completely relieved from duty to arrive or remain onpremises) — including but not limited to putting on or removing required work clothes or gear (but not a uniform worn outside work as well), receiving or sharing work-related information, security or safety screening, remaining at the place of employment awaiting a decision on job assignment or when to begin work, performing clean-up or other duties 'off the clock,' clocking or checking in or out, or waiting for any of the preceding — shall be considered time worked that must be compensated.

1.9.2    'Travel time' means time spent on travel for the benefit of an employer, excluding normal home to work travel, and shall be considered time worked.

84.     Under the CWA, employers must pay employees their agreed wage rate, which must be at least the applicable minimum wage, for all hours worked. *See* C.R.S. § 8-4-103; *see also* COMPS Order, Rule 3.

85.     The CWA provides that "[a]ny agreement … purporting to waive or modify [an] employee's rights in violation of this article shall be void." *See* C.R.S. § 8-4-121; *Barlow v. Westin DEN Operator, LLC*, No. 1:20-cv-01612-DDD-KLM, 2020 U.S. Dist. LEXIS 259845, at *9-13 (D. Colo. Dec. 2, 2020) (holding that Colorado Wage-and-Hour Law, not the union's collective bargaining agreement, governed minimum wages owed to union employees in Colorado).

- 11 -

86.     Under the CMWA, employers must pay employees at least the applicable minimum wage, which in the City and County of Denver must be at least the Denver minimum wage, for all time worked. *See* C.R.S. § 8-6-101; *see also* COMPS Order, Rule 3; *id*. at Rule 3.2 ("If an employee is covered by multiple minimum or overtime wage requirements, the requirement providing a higher wage, or otherwise setting a higher standard, shall apply"); D.R.M.C. § 58-1 *et seq*. (mandating minimum wage for employees who work in the City and County of Denver).

87.     The wages due to employees under Colorado Wage-and-Hour Law generally must include overtime compensation at a rate of one and one-half times the employees' regular rate of pay for all hours worked in excess of 40 hours per workweek, 12 hours per workday, and/or 12 hours per shift. *See* COMPS Order, Rule 4.

88.     Employers who violate the CWA by failing to pay wages earned by an employee, and who continue to violate the CWA by failing to tender such wages within 14 days of receiving a "written demand" are liable for significant civil penalties. *See* C.R.S. § 8-4-109(3).

89.     Employers who violate the CWA are presumptively liable for attorney's fees and costs incurred by the employee in obtaining their unpaid wages or compensation. C.R.S. § 8-4-110(b).

90.     Employers who violate the CMWA by failing to pay minimum wages and/or overtime compensation for hours worked over 40 hours per workweek, 12 hours per workday, and/or 12 hours per shift are liable for the unpaid minimum wages and/or unpaid overtime compensation, plus reasonable attorney's fees and costs. *See* C.R.S. § 8-6-118.

91.     Defendants violated the CWA by failing to pay Huber and the Similarly Situated Workers their hourly wage rates for all of the time that they worked, and by failing to pay overtime compensation to Huber and the Similarly Situated Workers at a rate of one and one-half times their regular rates for all of the hours that they worked over 40 hours per workweek, 12 hour per workday, and/or 12 hours per shift. *See* C.R.S. § 8-4-103; COMPS Order, Rules 3 and 4.

92.     Defendants each knew, or through the exercise of reasonable diligence should have known, that their policies violated Colorado Wage-and-Hour Law and, as a result, Defendants' violations were willful. *See* C.R.S. § 8-4-109(3)(b)(II); *see also* C.R.S. § 8-4-122.

93.     Based on its violations of Colorado Wage-and-Hour Law, Defendants are liable to Huber and the Similarly Situated Workers for unpaid minimum wages and unpaid overtime compensation, mandatory penalties under C.R.S. § 8-4-109(3)(b)(I) (if full payment of all wages is not tendered within 14 days of Defendants' receipt of this

Complaint), additional penalties under C.R.S. § 8-4-109(3)(b)(II), reasonable attorney's fees, and the costs incurred by Huber and the Similarly Situated Workers in this action. *See* C.R.S. §§ 8-4-109(3)(b), 8-4-110; C.R.S. § 8- 6-118.

**SECOND CLAIM FOR RELIEF—FAILURE TO PROVIDE REST BREAKS
AS TO HUBER AND THE CLASS MEMBERS**

94.     Huber incorporates all allegations in paragraphs **Error! Reference source not found.** to 76.

95.     Under Colorado Wage-and-Hour Law, employers must "authorize and permit a compensated 10-minute rest period for each 4 hours of work, or major fractions thereof." COMPS Order, Rule 5.2.

96.     COMPS Order 5.2.4 requires:

> When an employee is not authorized and permitted a required 10-minute rest period, his or her shift is effectively extended by 10 minutes without compensation. Because a rest period requires 10 minutes of pay without work being performed, work during a rest period is additional work for which additional pay is not provided. Therefore, a failure by an employer to authorize and permit a 10-minute compensated rest period is a failure to pay 10 minutes of wages at the employee's agreed-upon or legally required (whichever is higher) rate of pay.

97.     Defendants failed to authorize and permit Huber and the Similarly Situated Workers to take a 10-minute rest period when they worked in Colorado.

98.     Defendants violated Colorado law by not authorizing or permitting Huber and the Similarly Situated Workers to take a 10-minute rest period for each 4 hours of work.

99.     Under Colorado Wage-and-Hour Law, an employee who works during what should be a rest period and is not provided additional pay that unprovided rest period has received less than the legal minimum wage for all hours worked.

100.     Thus, these employees are entitled to monetary damages for providing the employer with an equivalent number of minutes of work to without additional compensation.

101.     Defendants knew, or through the exercise of reasonable diligence should have known, that its policy violated Colorado Wage-and-Hour Law and, as a result, Defendants' violations were willful.

102.    Therefore, Huber and the Similarly Situated Workers are entitled to ten minutes of wages for each rest period that they failed to receive.

RELIEF SOUGHT

Huber, individually and on behalf of the Similarly Situated Workers, prays that the

Court:

a.    Certify a class action under C.R.C.P. 23;

b.    Appoint Huber as representative of the C.R.C.P. 23 class;

c.    Appoint Huber's counsel as counsel for the C.R.C.P. 23 class;

d.    Find Defendants liable for violations of Colorado Wage-and-Hour Law;

e.    Award all unpaid minimum wages, unpaid overtime compensation, liquidated damages, penalties, interest, and/or restitution available to Huber and the C.R.C.P. 23 class under Colorado law;

f.    Award attorneys' fees to Huber and the C.R.C.P. 23 class;

g.    Award costs of this action to Huber and the C.R.C.P. 23 class;

h.    Award pre- and post-judgment interest at the highest rates allowed by law; and

i.    Order such other and further legal and equitable relief the Court deems just, necessary, and proper.


Date:  June 12, 2025

Respectfully submitted,

*/s/ Matthew S. Parmet*

By: _____

**Matthew S. Parmet**, Atty Reg. # 53046
**PARMET LAW PC**
2 Greenway Plaza, Ste. 250
Houston, TX 77046
phone  713 999 5200
matt@parmet.law

**Don J. Foty**, Texas Bar No. 24050022
(*seeking admission pro hac vice*)
dfoty@fotylawgroup.com
**FOTY LAW GROUP**
2 Greenway Plaza, Suite 250
Houston, Texas 77046
Telephone: (713) 523-0001
Facsimile: (713) 523-1116

**Attorneys for Plaintiff**

### JURY DEMAND

Huber demands a trial by jury on all issues.

*/s/ Matthew S. Parmet*

_____

Matthew S. Parmet